(Nos. 64400, 64441 cons.—

UNITED AIRLINES, INC., *et al.*, Appellees, v. THE CITY OF CHICAGO *et al.*, Appellants.—MIDWAY AIRLINES, INC., Appellee, v. THE CITY OF CHI-CAGO *et al.*, Appellants.

*Opinion filed April 16, 1987.*

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Julie Elena Brown, of counsel), for appellants.

Stephen C. Neal, William F. Dolan and David M. Elston, of Kirkland & Ellis, of Chicago (Stephen P. Sawyer and John D. Nicholson, of Elk Grove Village, of counsel), for appellees United Airlines, Inc., et al.

William J. Gibbons and Douglas A. Freedman, of Latham & Watkins, of Chicago, for appellee Midway Airlines, Inc.

CHIEF JUSTICE CLARK delivered the opinion of the court:

The two causes consolidated in this appeal challenge the constitutionality of the Chicago vehicle fuel tax and the 1% city use tax as applied to aviation fuel. The Chicago Sales Tax Ordinance, effective since August 1, 1981, imposes a 1% use tax on the retail sales price of tangible personal property purchased at retail within the city of Chicago and on the use within the city of tangible personal property purchased at retail outside the city. As originally passed, the 1% city use tax provided an exemption for the use of jet fuel purchased at retail outside Illinois and delivered into the city by pipeline. An exemption was not, however, provided for the retail purchase of jet fuel within Illinois. On December 23, 1985, the city enacted an ordinance, effective January 1, 1986, repealing the exemption for jet fuel purchased at retail outside Illinois.

The city enacted the Chicago Vehicle Fuel Tax Ordinance on September 24, 1986, as part of a comprehensive revenue package that the city states was conceived to address an $80 million revenue shortfall resulting from the city's repeal of the Chicago commercial lease tax. The ordinance, which became effective October 6, 1986, imposes a tax of five cents per gallon on vehicle fuel purchased at retail within the city and purchased at retail outside the city, but used in the city. "Vehicle fuel" includes all fuel used to propel cars, trucks, buses, trains, motorcycles, boats, airplanes, and helicopters. The ordinance provides further that the city property

tax levy for 1986 shall be abated by the amount of revenue realized from the vehicle fuel tax in 1986.

On October 2, 1986, United Airlines, American Airlines, Northwest Airlines, Trans World Airlines, and US AIR (the O'Hare plaintiffs) filed suit in the circuit court of Cook County for declaratory and injunctive relief against the city of Chicago and certain of its officials. The complaint alleged that the vehicle fuel tax and the 1% city use tax breach and unconstitutionally impair the Chicago-O'Hare International Airport Use Agreement and Terminal Facilities Lease (the O'Hare Use Agreement), a contract in effect between the city and the O'Hare plaintiffs governing the airlines' use of the airport. The complaint also alleged that the challenged taxes place an impermissible burden on interstate commerce, are unconstitutional occupation taxes, and that the vehicle fuel tax violates due process because the enacting ordinance was not passed in accordance with the rules of the Chicago city council.

On October 10, 1986, Midway Airlines, Inc. (Midway), the major tenant of Midway Airport under a use agreement and terminal facilities lease with the city (the Midway Use Agreement), filed a virtually identical suit in the circuit court of Cook County. The suit was consolidated with the action filed by the O'Hare plaintiffs and with two other actions brought by nonairlines gasoline distributor groups who, though not now before this court, also challenged the validity of the vehicle fuel tax (Illinois Gasoline Dealers Association v. City of Chicago and Midwest Petroleum Marketers Association v. City of Chicago, Nos. 64427, 64458 cons.). The parties in all four suits filed cross-motions for summary judgment. Because of the great similarity in the language used to spell out the pertinent rights and obligations in the separate O'Hare and Midway use agreements, Midway did not file a memorandum or tender oral argument at the hearing

held on the parties' summary judgment motions, choosing instead to rely on the memorandum and oral argument of the O'Hare plaintiffs.

In a consolidated opinion, the circuit court granted summary judgment for the city with respect to the claims made by the nonairline gas-distributor groups. The circuit court also granted the city's motion for summary judgment on the O'Hare plaintiffs' and Midway's (hereinafter jointly referred to as the airlines) claim that the vehicle fuel tax violated due process, but granted summary judgment for the airlines on the ground that the challenged taxes, as applied to aviation fuel, unconstitutionally impair the use agreements. In light of its ruling, the circuit court did not reach the airlines' commerce clause or occupation tax claims. The city filed direct appeals to this court from the circuit court's ruling denying the city summary judgment on the airlines' impairment-of-contract claim. The airlines do not appeal from the circuit court's ruling denying their summary judgment motion on the due process claim. We allowed the city's appeals (103 Ill. 2d R. 302(b)), consolidated the two airline causes, and ordered the matter expedited.

During the course of this litigation, the parties have focused almost exclusively on the terms of the O'Hare Use Agreement. The present agreement, executed in 1985, amends and restates the 1983 O'Hare Use Agreement, which superseded the original 1959 use agreement. The agreement, a lengthy single-spaced document covering over 150 pages of the record, grants the airline signatories the right to conduct an airline-transportation business at O'Hare and to perform there all necessary and incidental operations and functions through May 11, 2018. In exchange for this right, the airline signatories agree to pay the city all rentals, fees, and charges sufficient to cover the net cost of operating, developing, and maintaining O'Hare as well as the net cost of financing

improvements. The use agreement segregates the airport into six cost-revenue centers so that rentals, fees, and charges due are allocated among the airlines according to their respective usage of the airport. Under the terms of the agreement, the city utilizes seven different airport funds to account for the monies it collects from the airline signatories. The city maintains these funds entirely separate and apart from the city general corporate fund.

The 1985 Midway Use Agreement in effect between the city and Midway expires in 1992. In exchange for the right to conduct an airline-transportation business at Midway airport, the agreement requires Midway to pay rents, charges, and fees calculated in a manner to ensure that Midway and the other airlines using the airport are responsible for the entire cost of operating the airport. The city accounts for the monies it collects for the operation of Midway airport through three different funds created by the use agreement, each of which is maintained separate and apart from the city general corporate fund. Although Midway did not file a memorandum below in support of its summary judgment motion, Midway has favored this court with a short brief which is limited to addressing factual points unique to it. In light of the substantial similarity between the O'Hare and Midway use agreements for the purposes of our review, Midway states that it has adopted the arguments made in the brief filed by the O'Hare plaintiffs. We now turn to those arguments, noting where appropriate any relevant difference in the two use agreements.

Both the vehicle fuel tax and the 1% city use tax are general municipal revenue taxes applicable to all users of all types of vehicle fuel used within the corporate boundaries of the city. The city argued in the circuit court that the O'Hare Use Agreement does not prohibit the challenged taxes, which, by their very nature as general

taxes, fall in an equal fashion on the airlines as well as the general public. The circuit court found, however, and the airlines argue here, that section 3.04(b) of the O'Hare Use Agreement bars the vehicle fuel tax and the 1% city use tax. Section 3.04(b) provides in pertinent part:

"Except as in this Agreement otherwise specifically provided, no charges, fees or tolls of any nature, direct or indirect, shall be imposed by [the] City upon [the airline signatories] for the privilege of purchasing, selling or using for a purpose herein permitted any materials or services purchased or otherwise obtained by [the airline signatories]. The foregoing shall not *** preclude [the] City from imposing any tax, charge, or permit or license fee not inconsistent with the rights and privileges granted to the [airline signatories] hereunder. Notwithstanding the foregoing, nothing in this Section 3.04 shall be deemed to permit [the] City to levy, or preclude [the] City from levying, a passenger facility charge or other similar tax at the Airport."

Although the circuit court made no separate findings of fact in its memorandum of decision with regard to the Midway Use Agreement, we note that section 2.06 of the agreement parallels section 3.04(b) of the O'Hare Use Agreement. Section 2.06 provides in pertinent part: "[E]xcept as herein otherwise specifically provided, no charges, fees or tolls of any nature, direct or indirect, shall be imposed by [the] City upon [Midway] for the privilege of purchasing, selling or using any materials or services purchased or otherwise obtained by [Midway]." Section 18.01(a) of the O'Hare Use Agreement and section 19.02(a) of the Midway Use Agreement identically provide:

"Nothing contained herein shall impair the right of [the] City in the exercise of its governmental functions to require [the airlines] to pay any tax or inspection fees or to procure necessary permits or licenses, provided such re-

quirement is not inconsistent with the rights and privileges granted to [the airlines] hereunder."

Section 3.04(b) and section 18.01(a) of the O'Hare Use Agreement and section 19.02(a) of the Midway Use Agreement expressly recognize the city's right to impose taxes on the airlines "not inconsistent with the rights and privileges granted to [the airlines under the agreement]." Conversely, they implicitly recognize that some types of taxes might be inconsistent with the airlines' rights and privileges. The airlines contend that the language in section 3.04(b) of the O'Hare Use Agreement and section 2.06 of the Midway Use Agreement prohibiting the city from imposing additional "charges, fees and tolls of any nature" on the airlines' purchase of "materials or services" establishes their right to be free from imposition of the vehicle fuel tax and the 1% city use tax.

The primary objective in construing a contract is to ascertain the intent of the parties and give effect to that intent. (*Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 364.) Generally, where no ambiguity exists, the intention of the parties must be ascertained from the contract itself. (*Lenzi v. Morkin* (1984), 103 Ill. 2d 290, 293.) It is well established that a contract should be given a fair and reasonable construction based upon a consideration of all of its language and provisions. (*Shelton v. Andres* (1985), 106 Ill. 2d 153, 159; *Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 67.) In determining "a fair and reasonable construction, 'courts are not confined to a strict and literal construction of the language used, when such construction will frustrate the intention of the parties, gathered from a consideration of the whole instrument.' " (*Shelton v. Andres* (1985), 106 Ill. 2d 153, 159, quoting *Shadden v. Zimmerlee* (1948), 401 Ill. 118, 123.) Thus, while the language used in a contract is ordinarily the best evidence of the

intention of the parties, a court may properly disregard even unambiguous language when it is clear that the parties meant something different from what was said. *White v. Roughton* (7th Cir. 1982), 689 F.2d 118, *cert. denied* (1983), 460 U.S. 1070, 75 L. Ed. 2d 947, 103 S. Ct. 1524; see also Restatement (Second) of Contracts sec. 202, comment c (1981); A. Farnsworth, Contracts sec. 710, at 492-93 (1982).

The airlines posit that a "tax" is a "charge" for purposes of construing the provisions in the Midway and O'Hare agreements prohibiting additional city "charges, fees or tolls" on "materials or services" purchased or obtained by the airlines. Since aviation fuel is a "material" used by the airlines, the airlines conclude that it must follow that they cannot be subject to either the vehicle fuel tax or the 1% city use tax. We reject the airlines' conclusion for it rests on a premise that is fatally flawed. The question is not, as the airlines assume, whether a "tax" is a "charge" in the abstract, but the very different question whether the parties intended the prohibition of "charges" to include taxes of general applicability that fall on, among other things, aviation fuel.

Our examination of the use agreements reveals that the parties did not intend to bar the city from levying a tax on aviation fuel that affects the airlines no differently than any other business or individual required to pay the tax. The O'Hare agreement repeatedly uses the words "rentals, fees and charges," typically in the aggregate. In each instance, the words unquestionably refer to the payments that the signatories and others make to the city for their right to use or conduct a permitted activity at the airport, and clearly do not refer to taxes. For example, section 5.01(a) expressly provides that "the aggregate of all rentals, fees and charges" paid under the agreement shall be sufficient to cover the costs of operating, maintaining and developing the air-

port. Section 5.01(b) requires the city to operate the airport prudently to minimize the "rentals, fees and charges" the signatories must pay. Article VII articulates the time periods for payment of various rentals, fees and charges, and article XXIV gives the city certain remedies in the event of a default by a signatory, including the failure to pay the specified rentals, fees and charges. The word "tax" is conspicuously absent from articles V, VII and XXIV. Sections 10.04(c), 11.03(b) and 16.03(b) use the words "fees, charges and rentals" six times, each time clearly referring to the fees, charges and rentals payable under the agreement. The word "tax," again, appears nowhere in those sections or the articles which include them.

On the other hand, the word "tax," which is used sparingly in the O'Hare agreement and only once in the Midway agreement, is used in all but one instance in sections which acknowledge the city's right to impose taxes. Section 15.03 of the O'Hare agreement, for example, obligates the signatories to "pay all taxes *** required by any governmental authority in connection with the operations or activities performed by it hereunder." Both sections 18.01(a) of the O'Hare agreement and 19.02(a) of the Midway agreement provide that nothing in the agreements "shall impair the right of [the] City in the exercise of its governmental functions to require [the airlines] to pay any tax *** provided such requirement is not inconsistent with the rights and privileges granted to [the airlines]."

The second sentence of section 3.04(b) of the O'Hare agreement, on which the airlines rely, prohibits the city from imposing additional "charges, fees or tolls" on "any materials or services" purchased or obtained by the airlines. The third sentence expressly qualifies the second by providing that it "shall not *** preclude the City from imposing any tax, charge, or permit or license

fee not inconsistent with the rights and privileges granted to [the airlines] hereunder." The fourth, and last, sentence provides: "Notwithstanding the foregoing, nothing shall be deemed to permit [the] City to levy, or preclude [the] City from levying, a passenger facility charge or other similar tax."

The fourth sentence in section 3.04(b), which the airlines argue manifests an intent to equate the meanings of the words "charge" and "tax," has no counterpart in the Midway agreement. It was ostensibly included to show that the parties had contemplated the possibility of some form of tax that would levy on airline passengers, but were unable to reach a meeting of the minds over its legality. The sentence makes clear that the parties intended to express no legal opinion on the subject and intended no more. We observe that the word "charge" has no meaning on its own in the context in which it is used, but rather is an inseparable part of the expedient label: "passenger facility charge." The sheer fortuity of the label cannot disturb or otherwise alter the distinctly different meanings that the parties have ascribed to the words "tax" and "charge" throughout the agreement. To be sure, the third sentence instructs that the city shall not be precluded from imposing any "tax, charge, or permit or license fee" not inconsistent with the rights of the airline signatories. The words "tax" and "charge" are used in the disjunctive precisely because the parties regarded the one to be distinctly different from the other. We therefore conclude that the language in the use agreements indicates that the parties did not intend to foreclose the city from imposing general taxes on aviation fuel.

Even assuming, *arguendo*, that the language of the use agreements did not clearly establish that the parties did not intend to bar the city from imposing the instant taxes, we would find the airlines' construction of the

agreements implausible for it fails to provide any rational or consistent basis for distinguishing between the taxes the airlines pay and those challenged here. If, for example, the prohibition on "charges" is construed to include general taxes on aviation fuel, then the airlines would not only be exempt from the challenged taxes but would likewise be exempt from paying the Chicago sales tax on all "materials" purchased, a tax which the airlines do not deny they pay and have never protested. The absurdity of such a result is readily apparent—there being little, if indeed anything, to commend in a construction that would allow the airlines to arbitrarily exempt themselves from whatever taxes they disfavor. In addition, the airlines' claim that the record does not support a finding that the airlines pay the Chicago sales tax on such purchases is belied by an affidavit filed by the city. The city's affidavit avers that the airlines have been paying the Chicago sales tax since its inception. We note that the airlines have never in any way denied or contradicted the city's affidavit. Further, we also note that the airlines' mistaken construction would apply not only to "materials" but also to any "services" obtained by the airlines, which would yield the equally absurd result that employee head taxes would be impermissible. The airlines, however, concede that they do in fact pay the employers' expense tax, which is a tax on an employer's right and privilege to engage the services of its employees, and the airlines do not contend that "services" obtained by the airlines exclude those rendered by their own employees.

Because we find that the parties did not intend sections 3.04(b) of the O'Hare agreement or 2.06 of the Midway agreement to prohibit either the vehicle fuel tax or the 1% city use tax, as they apply to aviation fuel, and that the taxes are not inconsistent with the rights and privileges of the airlines under the agreements, we

conclude that the taxes neither breach nor unconstitutionally impair the agreements. In view of our decision, we need not consider the city's contention that a contractual exemption from taxes would constitute a surrender of the power to tax in direct contravention of article IX, section 1, of our 1970 constitution (Ill. Const. 1970, art. IX, sec. 1).

For the reasons stated, the judgments of the circuit court are reversed as to the impairment-of-contract counts and the causes are remanded to the circuit court with directions to enter judgment for the city on those counts, and for further proceedings consistent with this opinion.

*Judgments reversed;*
*causes remanded,*
*with directions.*