O.C. SMITH, Plaintiff, v. CHICAGO HOUSING AUTHORITY, Defendant and Third–Party Plaintiff-Appellant (Interstate Service Corporation, Third–Party Defendant-Appellee).

First District (5th Division)   No. 1—87—3528

Opinion filed August 18, 1989.

Mitchell Ware, Frank M. Grenard, Eileen M. Letts, and David S. Allen, all of Jones, Ware & Grenard, of Chicago, for appellant.

John J. Walsh III, of Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Robert J. Franco, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

This appeal involves the denial of the Chicago Housing Authority's post-trial motion for indemnification by Interstate Service Corporation for costs incurred in the defense of a personal injury suit.

We reverse and remand the cause with directions.

On October 2, 1979, O.C. Smith, a North Carolina Mutual Insurance Company sales representative, travelled to 4101 South Federal Street in Chicago to collect an insurance premium from Jim Jones. Jones lived in a second-floor apartment in the Robert Taylor Homes housing project located at that address. While in Jones' apartment, Smith observed a conversation between Jones and John Rice. After Smith collected the premium, he left. As Smith was returning to his automobile via the north stairwell of the building, Rice appeared, shouted at Smith, and shot Smith in the back. Smith eventually recovered from the gunshot wound. Rice was subsequently convicted for the shooting.

On September 12, 1981, Smith filed a personal injury action against the Chicago Housing Authority (CHA) arising out of the shooting. The complaint, as amended, alleged that the CHA was negligent in the following ways: hiring incompetent security personnel, failing to provide sufficient security in areas where and when criminal conduct was likely, carelessly positioning security personnel, providing security personnel at a time and place which actually increased the likelihood of criminal conduct, failing to warn security personnel of the likelihood of criminal conduct, and failing to properly secure an area where criminal conduct was likely.

In turn, the CHA filed a third-party complaint against Interstate Service Corporation (Interstate). The third-party complaint was based on an indemnification agreement in a contract originally executed in February 16, 1946. Pursuant to that contract, the CHA engaged Interstate to provide security service for the CHA's housing projects. Paragraph 5(f) of the contract embodied the indemnification provision. That paragraph provided Interstate would

> "hold the CHA harmless from and shall defend the CHA against any and all suits, claims and demands whatsoever brought by any person *** for injuries to *** any person or damage to or loss of property *** alleged or claimed to have been caused or to have arisen out of or in connection with or incidental to any work to be done by [Interstate] hereunder, whether or not such loss, injury or damage shall be caused or contributed to by the joint or concurring negligence of the [CHA], *** and to pay, liquidate and satisfy any and all judgments, awards or expenses

which may be rendered against or incurred by [the] CHA in connection therewith, including *** all costs of suits, attorneys fees and reasonable expenses therewith whether or not such judgment, award or expense shall be rendered against or incurred by the CHA in whole or in part because of the joint or concurring negligence of the CHA, its agents or employees; provided, however, that the CHA shall have the right at its option to participate in any such litigation without relieving [Interstate] of any of its obligations under the contract. [Interstate] shall insure all the liability assumed hereunder and shall furnish the CHA with satisfactory evidence (subject to the approval of the CHA) of such insurance coverage. [Interstate] shall hold and save the CHA, its officers, agents, servants, and employees harmless from liability for the use of any invention, article, or appliance used in the performance of the contract."

Interstate denied the material allegations of the third-party complaint and asserted, as an affirmative defense, that no basis for indemnification could exist because the security personnel provided under the contract were joint servants of the CHA and Interstate.

Prior to the commencement of trial, an order was entered outlining the obligation of Interstate to indemnify the CHA under paragraph 5(f). Specifically, the order provided paragraph 5(f)

"require[d] [Interstate] to hold harmless and defend [the] CHA, pursuant to [the agreement's] terms, only in the event that a claimed injury was caused by, or arose directly from, the act or failure to act solely by [Interstate] *** or from the joint acts or failures to act by [Interstate] *** and [the] CHA ***. [Interstate] shall not be required to hold harmless and defend [the] CHA under the terms of the indemnity agreement for a claimed injury which was caused by, or arose directly from, the act or failure to act solely by [the] CHA."

At trial, considerable testimony focused on procedures used by Interstate in patrolling the Robert Taylor Homes and whether those measures were instituted to protect only CHA property or contemplated, as well, protection of persons on CHA premises. The record indicates Interstate patrolled the inside and outside of the Robert Taylor Homes. Inside, Interstate employed a "top-down" or "vertical" patrol method in which security officers walked from the top floor of a particular building to the first floor, checking each floor en route. The officers were instructed to make their presence known at designated apartments during their patrol.

Regarding the scope of Interstate's duty, testimony established

that the function of security personnel was to protect CHA property and buildings and to deter crime from occurring on CHA property through their presence. Interstate personnel were directed to contact their headquarters or the Chicago police department or make a citizen's arrest if they witnessed a crime in progress. The officers were instructed that the Chicago police department was responsible for tenants' safety.

At the close of trial, the trial judge directed the jury, pursuant to a special interrogatory, to determine whether the CHA had voluntarily undertaken to provide protection for persons on its premises, including Smith. The trial judge advised the jury that if they determined the CHA had not voluntarily undertaken that duty, they should cease deliberations. However, if they determined the CHA did so undertake to protect persons on its premises, then they should further consider whether to award a verdict for Smith or the CHA. If the jury found in favor of Smith, the trial judge instructed, the jury was to answer another special interrogatory indicating whether Interstate was negligent in its patrol procedures and whether that negligence resulted in Smith's injuries.

The jury concluded the CHA had undertaken to provide security for persons at the Robert Taylor Homes and answered the first interrogatory affirmatively. However, the jury returned a verdict for the CHA and, therefore, did not answer the special interrogatory relating to Interstate's negligence.

Subsequently, the CHA filed a post-trial motion seeking reimbursement from Interstate for attorney fees in conjunction with its defense of Smith's action. The trial judge denied that motion, concluding that the agreement between Interstate and the CHA did not contemplate protection of persons on CHA premises. This appeal followed.

OPINION

As Interstate points out in its brief on appeal, the issue of whether Interstate must indemnify the CHA pursuant to paragraph 5(f) for attorney fees and costs incurred in defense of Smith's suit necessarily raises an issue as to the scope of Interstate's security duty, as it is breadth of the ultimate undertaking which defines the duty to indemnify.

Our supreme court has had occasion, in *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596, to previously consider Interstate's scope of duty under the very contract at issue in this appeal. *Pippin* involved a wrongful death action by decedent's mother against the CHA and Interstate following the stabbing death of her

son by a tenant in a common area of a CHA building. The circuit court granted summary judgment in favor of defendants. The appellate court reversed.

In affirming the appellate court's reversal, the supreme court considered, first, the CHA's duty with respect to security services. The court recognized that although the CHA had no independent duty to protect against criminal acts on its property, it had voluntarily engaged Interstate, an independent contractor, to provide security services. (*Pippin*, 78 Ill. 2d at 209, 399 N.E.2d at 599.) However, because the CHA, itself, did not undertake to perform security services, it could not be held to have had a duty to protect the plaintiff. (*Pippin*, 78 Ill. 2d at 209, 399 N.E.2d at 599.) The CHA's duty was limited by the extent of its undertaking, *viz.*, to use reasonable care in engaging Interstate. *Pippin*, 78 Ill. 2d at 209, 399 N.E.2d at 599.

The court next considered the scope of Interstate's obligation under the contract. The court rejected Interstate's arguments to the contrary and concluded Interstate's duty under the contract extended to the protection of persons lawfully on CHA premises. *Pippin*, 78 Ill. 2d at 212, 399 N.E.2d at 534.

Here, Interstate attempts to distinguish *Pippin* from the instant case by arguing that, in *Pippin*, the court considered only the "bald" contract language. In the instant case, Interstate contends, the jury heard testimony of how the contract had been modified by the parties' understanding and conduct over the course of 30 years. In apparent reference to the jury's answer to the special interrogatory that the CHA voluntarily undertook to protect persons on its property, Interstate contends *Pippin* cannot control the disposition of the instant appeal because the question of the scope of the agreement was resolved in Interstate's favor.

█ We are not persuaded by Interstate's arguments. Although the jury below considered testimony regarding the scope of the contract's undertaking, there can be no dispute that, as the supreme court concluded in *Pippin*, beyond exercising care in engaging Interstate, the CHA could owe no duty to Smith. There is no evidence in the record that CHA guards patrolled the Robert Taylor Homes. The CHA engaged Interstate for that purpose. Interstate's suggestion here that the jury's answer to the special interrogatory indicated something more than that, *through engagement of Interstate*, the CHA voluntarily undertook to protect individuals on its premises is a distortion of the record. In view of the jury's determination, we therefore reach the same conclusion the court in *Pippin* reached without the benefit of testimony: that the contract between the CHA and Interstate contem-

plated the protection of persons lawfully on CHA premises.

■ We next determine whether the CHA is entitled to reimbursement of attorney fees and costs of suit under paragraph 5(f) of the contract. We note, generally, that construction of indemnification provisions is determined by the same principles which govern interpretation of other contract provisions. (*Friedman, Alschuler & Sincere v. Arlington Structural Steel Co.* (1985), 140 Ill. App. 3d 556, 489 N.E.2d 308.) Namely, courts must endeavor to ascertain and effectuate the parties' intent. (*United Airlines, Inc. v. City of Chicago* (1987), 116 Ill. 2d 311, 507 N.E.2d 858.) In the absence of ambiguity, that intent is to be determined solely from the language employed in the instrument. *P.A. Bergner & Co. v. Lloyds Jewelers, Inc.* (1986), 112 Ill. 2d 196, 492 N.E.2d 1288.

■ By express language, paragraph 5(f) obligated Interstate to "pay, liquidate and satisfy any and all *** expenses *** incurred by the CHA" in "connection with or incidental to any work to be done" by Interstate including "all costs of suits, attorney[ ] fees and reasonable expenses therewith." That language clearly outlines a duty to indemnify the CHA under the facts of the instant case because, as we have indicated above, "work to be done" by Interstate included the protection of persons on CHA premises. We note, however, that, as the trial judge correctly determined in interpreting paragraph 5(f) prior to trial, Interstate's duty would arise only where the claimed injury was related to Interstate's own activities or its joint activities with the CHA. Interstate could have no obligation to indemnify the CHA for attorney fees and costs incurred in conjunction with any defense of allegations in Smith's complaint concerning negligence in the hiring of Interstate. See *Pippin*, 78 Ill. 2d at 209, 399 N.E.2d at 599.

We therefore reverse the judgment of the circuit court and remand the matter for further proceedings to determine the amount of attorney fees and costs incurred by the CHA in its defense of Smith's suit. To the extent those fees and costs were incurred solely in defense of allegations for acts or failures to act with respect to the protection of Smith, and not associated with any allegation of negligence in the hiring of Interstate, judgment for the CHA should be entered for that amount.

Reversed and remanded.

MURRAY, P.J., and PINCHAM, J., concur.