CAREY CANADA, INC., Plaintiff,

v.

CALIFORNIA UNION INSURANCE CO., et al., Defendants.

The CELOTEX CORPORATION, Plaintiff,

v.

CALIFORNIA UNION INSURANCE CO., et al., Defendants.

Civ. A. Nos. 83–1105, 86–1142.

United States District Court, District of Columbia.

Jan. 17, 1989.

See also, 118 F.R.D. 242.

Jerold Oshinsky, Nicholas J. Zoogman, Stephan G. Wielgoz, Karen L. Bush, Anderson, Baker, Kill & Olick, Washington, D.C., for plaintiffs.

Roger E. Warin, Daniel C. Sauls, John A. Flyger, Steptoe & Johnson, Washington, D.C., for defendant The Home Ins. Co.

James W. Greene, William E. Nowakowski, Bromley, Brown & Walsh, Washington, D.C., for defendants Columbia Cas. Co. and Northbrook Excess and Surplus Co.

Nancy J. Gleason, Marybeth Jacobsen, Dowd & Dowd, Ltd., Chicago, Ill., for defendant Northbrook Excess and Surplus Ins. Co.

James P. Schaller, Christine Nykiel, Jackson & Campbell, P.C., Washington, D.C., for defendant National Union Fire Ins. Co. of Pittsburgh, Pa.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Plaintiffs Carey Canada, Inc. and The Celotex Corporation are mining and manufacturing companies that have been named as defendants in thousands of lawsuits alleging injury due to exposure to the product they mine and process, asbestos.

Carey Canada is a wholly-owned subsidiary of The Celotex Corporation which in turn is a wholly-owned subsidiary of its Florida-based parent company, Jim Walter

Corporation.[1] Each of the policies in question covered Jim Walter, Celotex, Carey Canada and most of Jim Walter's subsidiaries.

The four defendants, Northbrook Excess & Surplus Insurance Company (Northbrook), The Home Insurance Company (Home), National Union Fire Insurance Company of Pittsburgh, Pa. (National Union), and Columbia Casualty (Columbia) are plaintiffs' excess [2] liability insurers. In 1983 and 1986 the respective plaintiffs brought declaratory judgment actions to determine the scope of the coverage of the policies provided by the defendants.[3] Plaintiffs then and now seek a declaration that the "asbestosis" exclusion in each policy *is limited to an exclusion for a distinct medical disease known as asbestosis* and that other diseases that occur as a result of exposure to asbestos, such as mesothelioma and other forms of cancer, are not excluded from coverage.[4] Defendants' position is that the asbestosis exclusion was intended to include all bodily-injury claims arising out of exposure to asbestos and is not limited to the single disease asbestosis.

These antithetical and intractable positions have caused the parties to embark on a lengthy discovery and procedural voyage. Plaintiffs now call at the port of summary judgment, filing a discrete motion to determine the reach of the insurance policies' exclusions.

Turning to the liability insurance policies in question, they comprise eight separate excess liability policies issued by defendant insurers for the 5 year period between October, 1977 and October, 1982.[5] It is appropriate to point out that prior to 1977 none of the previous policies issued to plaintiffs by these defendants had an asbestos exclusion of any sort. However, beginning in October, 1977, and in the wake of thousands of lawsuits, the four defendants issued policies with variously worded asbestos-related exclusions.[6] We turn now to the precise language of these exclusions.

From 1977 through 1980 *Northbrook* issued policies with an exclusion that reads, "[T]his policy shall not apply to claims made against the insured arising out of asbestosis or *any similar condition* caused by asbestos." (emphasis supplied).

1. Plaintiffs' parent company, Jim Walter Corporation, through its in-house insurance company, Best Insurers, Inc., its agent, Rollin Burdick Hunter Co. (RBH), a Chicago brokerage firm, and other brokers, purchased the policies, but is not a plaintiff in this action.

2. Aetna Casualty & Surety Company (Aetna) is plaintiffs' primary carrier. Aetna's policies for the relevant period exclude all asbestos-related disease claims. Aetna's policy exclusion states that

   all bodily injury which arises in whole or in part, either directly or indirectly, out of asbestos, whether or not the asbestos is airborne as a fiber or particle, contained in a product, carried on clothing or transmitted in any fashion whatsoever.

   Aetna is no longer a party to this case.

3. On September 15, 1987 this court ordered that the trial on the issues of the scope of "asbestosis" exclusions and the affirmative defenses of misrepresentation, estoppel, and mutual mistake be bifurcated from the trial on the "trigger of coverage" issues. Mem.Order at 1 (September 15, 1987). This Memorandum Opinion relates only to the first of the above issues, *i.e.,* the scope of the "asbestosis" exclusions.

4. Plaintiffs concurrently filed a Motion for Summary Judgment Dismissing Defendants' "Affirmative Defenses" of Mutual Mistake, Mis-

representation, and Estoppel. Defendants have also filed a Motion for Summary Judgment. Neither is considered here.

5. Defendant Northbrook Excess & Surplus Insurance Company ("Northbrook") issued the following four policies to Jim Walter Corporation ("JWC") for the periods noted: policy number 63003744 (10/1/77–10/1/78); policy number 63005051 (10/1/78–10/1/79); policy number 63006044 (10/1/79–10/1/80); and policy number 63007156 (10/1/80–10/1/81).

   Defendant The Home Insurance Company ("The Home") issued a single policy, number HEC 9631289, to JWC for the period 10/1/77–10/1/78.

   Defendant National Union Fire Insurance Company of Pittsburgh, Pa. (National Union) issued two policies to JWC for the periods indicated: policy number 1189777 (10/1/77–10/1/78) and policy number 1226411 (10/1/79–10/1/80).

   Defendant Columbia Casualty Company (Columbia) issued a single policy, number 416–93–97, to JWC for the period 10/1/78–10/1/79.

6. As an initial determination, this court held that each policy contained some form of asbestos-related disease exclusion. Mem. Opinion at 2 n. 1 (May 7, 1985).

*Home*'s policy contains no endorsement concerning asbestos-related claims, but, as plaintiffs have recognized, the court has determined that Home's policy incorporates Northbrook's asbestos exclusions. *Carey Canada v. California Union Insurance Co.*, 83–1105, Mem. Opinion at 2 n. 1 (May 7, 1985). *National Union*'s 1977–1978 policy period exclusion states, "it is understood and agreed that any bodily injury or property damage claim or claims arising out of *all asbestosis operations* is excluded from the policy." (emphasis in original). Like Home's 1977 policy, National Union's 1979 policy contained no asbestos-related exclusion. However, as already noted, we previously held that this policy incorporates the asbestos-related exclusion of the umbrella policy sold to plaintiffs by United States Fire Insurance Company (U.S. Fire). *Carey Canada v. California Union Insurance Co.*, 83–1105, Mem. Opinion at 2 n. 1 (May 7, 1985). The applicable U.S. Fire exclusion reads, "... this policy shall not apply to any liability imposed upon the insured arising out of ASBESTOSIS." (emphasis in original). Finally, *Columbia Casualty*'s exclusion provides that its policy "shall not apply to liability imposed upon the insured arising out of asbestosis."

In 1985 when it moved for partial summary judgment, plaintiff Carey Canada sought a preliminary ruling that the term "asbestosis" was clear and unambiguous, and that evidence sought to be obtained by defendants concerning the use and meaning of the term "asbestosis" at the time of the contract should be held inadmissible under the parol evidence rule. The immediate focus of plaintiffs in seeking a preliminary ruling was to limit certain requests for discovery made by defendants. In our opinion filed on May 7, 1985 this court denied plaintiff's motion, holding that the term "asbestosis," as used in the policies at issue, was ambiguous and that extrinsic evidence, probative of the "end all" of every contract dispute, the parties' contemporaneous contractual intent, was discoverable and could be presented at trial "for the purpose of showing that the parties' objective intentions were to exclude from coverage all asbestos-related diseases and

not only the disease medically known as asbestosis." *Carey Canada v. California Union Insurance Co.*, 83–1105, Mem. Opinion at 9–10 (May 7, 1985). We also noted that the burden on the defendants at trial would not be light and held that the evidence presented at trial must clarify the ambiguity or the ambiguous provision would be construed against the insurers who wrote the provision. *Id.* at 9–10. Extensive discovery by both sides followed thereafter and plaintiffs' present motion filed September 30, 1988 for similar relief and defendants' motion for summary judgment are predicated upon such additional discovery.

## I

As a threshold matter the court considers whether the substantive law of Florida or Illinois should govern the use of extrinsic evidence to determine the disputed meaning of contract terms. Although the parties have not asked the court to determine which state's law applies to this issue, choice of law has been briefed extensively by both parties. Upon analysis, this is a non-issue because the laws of the two states are not in conflict.

It is black letter law that a federal court, sitting in diversity, must apply the choice of law principles of its forum. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Carey Canada, Inc. v. Aetna Casualty & Surety Co.*, Nos. 84–3113, 85–1640, Mem. Opinion at 5 (D.D.C. March 30, 1988). In this district, choice of law principles direct us to apply the substantive law of the state that has the "more substantial interest" in the resolution of the dispute. Two states have a substantial interest in a resolution of this case: Florida, the principal place of business and place of incorporation of the Jim Walter Corporation, and Illinois, the situs of much of the negotiation of the excess policies. However, a choice of law between two states becomes pivotal only when a conflict exists between the laws of the two states. In the instant action, both states permit extrinsic evidence to be introduced once the court has

determined, as it has previously, that a key phrase or definition in a contract is ambiguous. *See Reinman, Inc. v. Preferred Mutual Ins. Co.*, 513 So.2d 788 (Fla.Dist.Ct. App.1987) (holding that when "particular words or phrases used in *insurance* contracts are 'ambiguous,' that is, doubtful as to meaning or capable of having more than one meaning, extrinsic evidence may be introduced to explain the ambiguity.") (emphasis supplied); *Seeburg Corp. of Delaware v. United Founders Life Ins. Co.*, 82 Ill.App.3d 1034, 38 Ill.Dec. 272, 403 N.E. 2d 503 (1980); *Carey Canada v. California Union Insurance Co.*, 83–1105, Mem. Opinion at 9–10 (D.D.C. May 7, 1985). Therefore, a choice between the substantive laws of Florida and Illinois governing the use of extrinsic evidence to clarify an ambiguity once a term or phrase is found to be ambiguous is not required.

## II

The court in effect has been asked to reconsider our previous finding that the term "asbestosis," as used in the relevant insurance policies, is ambiguous. Ordinarily, in interpreting contracts, courts refrain from intuiting the parties' subjective intent, but rather bind parties to the objective revelations of their intent as manifested by the ordinary meaning of the words in the contract.[7] However, in this imperfect world, courts are often confronted with claims that the meaning of the words written in contracts raises semantic uncertainty. In those cases courts must determine in which category the contract terms belong—clear or ambiguous. *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011 (3rd Cir.1980). It is well settled that whether a contract term is ambiguous is a question to be determined by the trial judge. Restatement (Second) of Contracts § 212 comment d (1981); *Reinman, Inc. v. Preferred Mutual Ins. Co.*, 513 So.2d 788 (Fla.Dist.Ct.App.1987); *Lasalle Nat'l Bank v. Service Merchandise Co.*, 827 F.2d 74 (7th Cir.1987) (applying Illinois law); *United Equitable Insurance Co. v. Reinsurance Company of America, Inc.*, 510 N.E.2d 914, 917 (1987) (stating that whether ambiguity exists is a question of law to be decided by the court). A finding of ambiguity in a contract is often pivotal because once the court determines that a word or phrase is susceptible to more than one meaning, it becomes vulnerable to the introduction of extrinsic evidence. In the instant case, a finding of ambiguity would permit us to look past the words of the contracts to the enormous quantity of extrinsic evidence presented by both plaintiffs and defendants.[8] However, before extrinsic evidence is employed to explain the ambiguity, the court must determine that the contract language itself is ambiguous.

On the previous occasion when faced with problems concerning the limits of discovery, the court held that the language of the insurance contracts' exclusions was ambiguous. At that time, we stated that parol evidence is properly used both to establish as well as clear up an ambiguity. *Carey Canada v. California Union Insurance Co.*, 83–1105, Mem. Opinion at 3 (May 7, 1985). In the parties' most recent pleadings the issue of whether parol evidence can "create" the ambiguity has been extensively briefed. We do not need to reach this point. This is because when confronted once again with the language of the relevant asbestos exclusions, and for the reasons stated below, we find that these exclusions are ambiguous on their face.

---

7. Justice Holmes once remarked:
   [T]he making of a contract depends not on the agreement of two minds, in one intention, but on the agreement of two sets of external signs—not on the parties' having meant the same thing but on their having said the same thing.
   Holmes, *The Path of the Law*, in *Collected Legal Papers*, 178 as quoted by Judge Friendly in *Frigaliment Importing Co. v. B.N.S. International Sales Corp.*, 190 F.Supp. 116, 117 (S.D.N.Y.

1960); D. Fessler & P. Loiseaux, *Contracts, Morality, Economics and the Marketplace* 348–366 (1982).

8. Material difference of meaning is a standard cause of contract disputes, and the determination of such disputes necessarily requires interpretation of the language and other conduct of the parties in the light of the circumstances. Restatement (Second) of Contracts § 20 comment b (1981).

At the outset, we must point out plaintiffs have conceded that one of the exclusions, National Union's 1977–1978 policy exclusion, is ambiguous.[9] This concession is hardly surprising when one examines the broad reach of this particular exclusion. National Union's exclusion states, "it is understood and agreed that any bodily injury or property damage claim or claims arising out of *all asbestosis operations* is excluded from the policy." (emphasis in original). What "asbestosis operations" comprise is left to speculation. Plaintiffs, on the other hand, contend that the other exclusions, including National Union's exclusion for a subsequent year 1979–1980, are unambiguous. However, compare the Northbrook exclusion for the same year [10] which reads, "[T]his policy shall not apply to claims made against the insured arising out of asbestosis or *any similar condition* caused by asbestos." (emphasis supplied). Plaintiffs assert that *this* exclusion is "self-determining" because the exclusions require "only an objective analysis of whether characteristics of a given asbestosis-related disease or condition are similar to the characteristics of asbestosis." [11] We feel certain that the interpretation of the phrase "asbestosis or any similar condition," were it to be attempted by linguists, insurance brokers, asbestos manufacturers, or even by oncologists, would elicit multiple responses and definitions. We therefore cannot accept the premise of counsel for plaintiffs that the latter exclu-

sion (the Northbrook exclusion) is so certain and unambiguous that the intention of the parties can be deduced from the language used without resorting to extrinsic evidence, especially when plaintiffs concede that the former exclusion (National Union's 1977–1978 exclusion) for "asbestosis operations" is ambiguous.

■ Plaintiffs suggest that we need only take judicial notice of dictionary definitions, medical references, and the like to conclude that "asbestosis or any similar condition" or "asbestosis" means simply the single disease.[12] Judicial notice is not unlimited. The doctrine applies to "self-evident truths that no reasonable person could question, truisms that approach platitudes or banalities." *Wooden v. Missouri Pacific Railroad Co.*, 862 F.2d 560 (5th Cir.1989). Although some words or phrases may acquire binding definitions as legal terms of art, such as numbers, common words of accepted usage, and dates, we are unable to accept plaintiffs' premise that the exclusionary language in the insurance contracts conforms to a single, standard usage.[13] Moreover, plaintiffs themselves felt the need to augment their legal argument that extrinsic evidence should not be permitted to vary the commonly known definition of asbestosis by using the depositions of medical experts. The term "asbestosis" when used by a medical specialist cannot be expected to have the same connotation as when used in an insurance context by in-

9. Plaintiffs' Motion for Partial Summary Judgment That the Asbestos–Related Exclusions to Defendants' Policies Exclude Coverage Only for the Single, Distinct Disease Asbestosis at 24. "In contrast to the [other] exclusions discussed [above], the asbestos-related exclusion in National Union's 1977 policy, which excludes bodily injury claims 'arising out of *all asbestosis operations,*' is ambiguous."

10. Of the eight policies at issue, Northbrook issued 4 with this exclusion. The court has held previously that the 1979 Home policy incorporates the same "asbestosis or similar condition" exclusion. Mem. Opinion at 2 n. 1 (May 7, 1985).

11. Plaintiffs' Motion for Partial Summary Judgment that the Asbestos–Related Exclusions to Defendants' Policies Exclude Coverage Only for the Single, Distinct Disease Asbestosis at 18.

12. Plaintiffs concede that "there is no such recognized term 'as asbestosis operations'." Plaintiffs' Motion for Partial Summary Judgment that the Asbestos–Related Exclusions to Defendants' Policies Exclude Coverage Only for the Single, Distinct Disease Asbestosis at 8.

13. As Justice Holmes once wrote, "A word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *See Towne v. Eisner,* 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372 (1918). *See* Restatement (Second) of Contracts § 202 comment f (1981) (technical words are often misused and extrinsic evidence may be used to show that a technical word or phrase was used in a non-technical sense).

surers, insurance brokers and policyholders. To use an extreme illustration, the term "grand slam" has a meaning to a bridge player entirely different from that to a baseball player. In many situations, and this is one, "context" is a paramount consideration.

Plaintiffs also contend that other court decisions which have described asbestosis as a distinct disease should be persuasive that in these particular policies the parties intended to contract for an exclusion of all diseases except asbestosis. However, in none of the cases cited by plaintiffs did a court determine that an exclusion for "asbestosis operations" or "asbestosis or any similar condition" unambiguously meant the single disease.

Plaintiffs have placed great reliance on a recent Illinois case in which the judge in granting summary declaratory judgment found an exclusion for "asbestosis" to mean only the single disease. *UNR Industries, Inc. v. Continental Insurance Co.*, 85–3532, 83–2523 (N.D.Ill. Nov. 8, 1988) [1988 WL 121574].[14] On the other hand, other cases in both Illinois and Florida have used the term asbestosis generically, *In re UNR Industries, Inc.*, 725 F.2d 1111, 1113 (7th Cir.1984) (using the term asbestosis broadly to refer to any asbestos-related disease); *Celotex Corp. v. Meehan*, 523 So.2d 141 (Fla.1988), and we find those usages to be as persuasive. In fact, as recently as January 4, 1989, the Fifth Circuit described a cancer suit as an asbestosis action and stated that *asbestosis* fibers had caused the cancer. *Wooden v. Missouri Pacific Railroad Co.*, 862 F.2d 560 (5th Cir.1989).

Second, although admitting that National Union's exclusion is ambiguous, plaintiffs ask the court to construe this exclusionary provision strictly against the insurance companies without the aid of extrinsic evidence. In support of their position, plaintiffs cite a number of Florida and Illinois cases which purport to hold that a court is required to decipher an ambiguous insurance exclusion without the benefit of proffered extrinsic evidence ("ambiguous policy exclusions are strictly construed without resort to extrinsic evidence").[15] However, none of the cases cited by plaintiffs purports to *exclude* relevant extrinsic evidence to explain the ambiguous term.[16]

Finally, plaintiffs contend that a recent Illinois district court decision, *UNR Industries, Inc. v. Continental Insurance Co.*, 85–3532, 83–2523 (N.D.Ill. Nov. 8, 1988), which held that an "asbestosis" exclusion in a Northbrook policy was unambiguous and applied only to claims arising from the disease medically known as asbestosis, has the additional effect of collaterally estopping Northbrook and Home from relitigating whether Northbrook used the term asbestosis generically. In view of the Illinois court reconsideration and vacation of its prior holding, it is not necessary to address this issue further.

We also reiterate that although a determination of whether a contract term is ambiguous is deemed to be a question to be determined by the trial judge, that determi-

---

**14.** This reliance is misplaced because the Illinois court even more recently has vacated its holding on this point, *UNR Industries Inc. v. Continental Insurance Co.*, No. 85 C 3532 at 4 (N.D.Ill. Jan. 10, 1989). In so doing the court referred to many instances presented by the insurance carriers "where medical, legal experts and other insurance companies (Continental in this case) have used the term asbestosis to mean 'asbestos-related' even though it can be shown to be incorrect from a technical point of view." (Slip op. p. 4).

**15.** Plaintiffs' Motion for Partial Summary Judgment at 24.

**16.** In *National Automobile Insurance Association v. Brumit*, 98 So.2d 330, 332 (Fla.1957) the court held that although the insurance policy was "artfully drafted" the policy was sufficiently clear on its face. *Nixon v. United States Fidelity & Guaranty Co.*, 290 So.2d 26, 29 (Fla.1973) involved a layman and did not purport to exclude extrinsic evidence of the meaning of the contract. In *Stuyvessant Insurance Co. v. Butler*, 314 So.2d 567, 570 (Fla.1975), the court found the term "minor" to be ambiguous and examined maritime law to determine the age of a minor. In *Dora Township v. Indiana Insurance Co.*, 78 Ill.2d 376, 36 Ill.Dec. 341, 400 N.E.2d 921 (1980), the court held that it should not determine the parties intent in a "vacuum," but rather should look to the circumstances and events surrounding the issuance of the policy.

nation does not "become imbued with *stare decisis* effect just because a judge made it." *South Hampton Co. v. Stinnes Corp.*, 733 F.2d 1108, 1115 n. 5 (5th Cir. 1984).

In summary, we therefore hold that the exclusionary language used in the insurance contracts at issue is ambiguous and that we will admit extrinsic evidence to assist us in deciphering the intent of the parties who attach different meanings to these exclusions.

## III

■ We emphasize that summary judgment, whether whole or partial, is a severe remedy because it "challenges the very existence or legal sufficiency of the claim or defense to which it is addressed." 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2711 (1983). It is an appropriate vehicle only when the evidence presented demonstrates that no genuine issue of material fact remains to be decided at trial. It becomes most inappropriate when the non-moving party survives "the rigors of demonstrating the potential for a *prima facie* case at trial." *Abraham v. Graphic Arts International Union*, 660 F.2d 811, 817 (D.D.C.1981). In this case the cumulative weight of the copious pleadings and the extrinsic evidence which we have permitted to be introduced, has raised substantial issues of material fact. It is unnecessary for us to get into and to discuss the merits or the weight accorded to each piece of evidence. It is enough that careful consideration of the record reveals *unresolved questions of the parties' intent* to exclude from coverage more than the single disease asbestosis.

An order consistent with the foregoing has been entered this day.

## ORDER

Upon consideration of plaintiffs' Motion for Partial Summary Judgment that the Asbestos–Related Exclusions to Defendants' Policies Exclude Coverage Only for the Single, Distinct Disease Asbestosis, defendants' Opposition thereto, and the entire record herein, it is this 13th day of January, 1989

ORDERED that plaintiffs' motion is denied.