CAREY CANADA, INC., Appellant,

v.

COLUMBIA CASUALTY
COMPANY, et al.

The CELOTEX CORPORATION,
Appellant,

v.

COLUMBIA CASUALTY
COMPANY, et al.

Nos. 89–7266, 89–7267.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 16, 1991.

Decided Aug. 9, 1991.

Jerold Oshinsky, Washington, D.C., with whom Nicholas J. Zoogman, New York City, and Karen L. Bush, Washington, D.C., were on the brief, for appellants.

James P. Schaller, with whom M. Elizabeth Medaglia, Washington, D.C., was on the brief, for appellees Nat. Union Fire Ins. Co. of Pittsburgh, Pa.

James W. Greene, Washington, D.C., was on the brief for appellee Columbia Cas. Co.

Before EDWARDS, D.H. GINSBURG, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

As Lord Mansfield propounded, "[m]ost of the disputes in the world arise from words." *Morgan v. Jones*, 98 Eng.Rep. 587, 596 (K.B. 1773) (citing Vide Essay on Human Understanding, c. 9, 10, 11). Courts agonize over the prospect of rendering judgment of far-reaching effect based on the construction of a single word. This is such a case.

Carey Canada, Inc. ("Carey Canada"), an asbestos mining company, and its parent company, The Celotex Corporation ("Celotex") (collectively, "the insureds" or "appellants"), are co-defendants in thousands of lawsuits alleging injury due to exposure to asbestos. During the period October 1, 1977 through April 12, 1983, Carey Canada and Celotex were sued in 22,490 asbestos-related disease claims. *Carey Canada, Inc. v. Cal. Union Ins. Co.*, 720 F.Supp. 1018, 1023 (D.D.C.1989). They here appeal a final judgment of the District Court in two consolidated cases denying a declaration that three excess liability insurance policies with Columbia Casualty Company ("Columbia Casualty") and National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") (collectively, "defendant insurance carriers" or "appellees") provide coverage for all claims alleging personal injury from exposure to asbestos except those alleging exclusively the distinct, non-cancerous disease of asbestosis, which the policies expressly exclude from coverage. We are called upon to decide whether the District Court, after reviewing thousands of pages of materials, evaluating the testimony of a multitude of witnesses, and applying the laws of Florida and Illinois [1] governing the admissibility of

---

1. The substantive law of either Florida or Illinois would govern the use of extrinsic evidence to construe the contract terms because both Florida, the principal place of business and place of incorporation of Celotex's parent Jim

Walter Corporation, and Illinois, the situs of much of the parties' negotiations of the excess liability policies, have substantial interests in the resolution of this case. *Carey Canada, Inc. v. Cal. Union Ins. Co.*, 708 F.Supp. 1, 3–4

parol evidence, properly determined that the parties, in using the term "asbestosis," intended to exclude all asbestos-related claims and not only the single disease asbestosis. We affirm the District Court's judgment in part, and vacate and remand in part for consideration not inconsistent with this opinion.

## I. BACKGROUND

### A. *The Parties and the Asbestosis Exclusions*

Carey Canada, a wholly-owned subsidiary of Celotex organized under the laws of the Province of Quebec, has its principal place of business in Quebec, Canada. Celotex, a privately-owned Delaware corporation with its principal place of business in Florida, manufactures and sells building materials. Celotex is a wholly-owned subsidiary of the Jim Walter Corporation ("Jim Walter" or "JWC"). JWC (not a party to this action), through its in-house insurance company, Best Insurors, Inc., its agent, Rollin Burdick Hunter Co., and other brokers, purchased the three policies at issue to cover Jim Walter, Celotex, Carey Canada, and most of Jim Walter's subsidiaries.

Appellees Columbia Casualty and National Union are two of the insureds' excess liability insurance carriers. Aetna Casualty & Surety Company ("Aetna") is the primary carrier. Aetna's policies for the relevant period exclude all asbestos-related disease claims. Specifically, the Aetna policy excludes:

> [A]ll bodily injury which arises in whole or in part, either directly or indirectly, out of asbestos, whether or not the asbestos is airborne as a fiber or particle, contained in a product, carried on clothing or transmitted in any fashion whatsoever.

*Carey Canada,* 708 F.Supp. at 2 n. 2. Aetna is no longer a party to this action.

In 1983 and 1986, the insureds brought declaratory judgment actions to determine the scope of coverage of policies they purchased from the defendant insurance carriers. *See id.* at 2. Appellants sought a declaration that the "asbestosis" exclusion in each policy *"is limited to an exclusion for a distinct medical disease known as asbestosis* and that other diseases that occur as a result of exposure to asbestos, such as mesothelioma and other forms of cancer, are not excluded from coverage." *Id.* (emphasis in original). The defendant insurance carriers maintain that the parties intended the asbestosis exclusion to exclude all bodily-injury claims arising out of exposure to asbestos and not to restrict the exclusion to the single disease asbestosis. *Id.*

The liability insurance policies at issue are three policies the insureds purchased from the defendant insurance carriers to cover the three-year period between October 1977 and October 1980. National Union issued two policies to JWC; policy no. 1189777 (10/1/77–10/1/78) ("1977 National Union Policy"), and policy no. 1226411 (10/1/79–10/1/80) ("1979 National Union Policy"). Columbia Casualty issued a single policy, no. RDX 416–93–97 (10/1/78–10/1/79) ("Columbia Casualty Policy"), to JWC. Prior to 1977, none of the policies issued to appellants by the defendant insurance carriers contained asbestos exclusions of any kind. Beginning in October 1977, however, and in the face of thousands of lawsuits, the defendant insurance carriers issued policies with variously worded asbestos-related exclusions.

The 1977 National Union Policy exclusion states, " 'it is understood and agreed that any bodily injury or property damage claim or claims arising out of *all asbestosis operations* is excluded from the policy.' " *Carey Canada,* 708 F.Supp. at 3 (emphasis in original). The 1979 National Union Policy contained no asbestos-related exclusion. Rather, this policy incorporated or "followed form" to the asbestos-related exclusion of the umbrella policy sold to appellants by another insurance company, Unit-

(D.D.C.1989). The District Court concluded that the laws of Florida and Illinois governing the use of extrinsic evidence to construe ambiguous contract terms were not inconsistent, and thus it did not need to choose between Florida and Illinois substantive law. *Id.* at 4. Accordingly, we review the District Court's application of both Florida and Illinois law on appeal.

ed States Fire Insurance Company ("U.S. Fire"). *Id.* The applicable U.S. Fire exclusion provides, " '[t]his policy shall not apply to any liability imposed upon the insured arising out of ASBESTOSIS.' " *Carey Canada,* 720 F.Supp. at 1019 (emphasis in original).

The Columbia Casualty Policy contains an exclusion which provides that the policy " '[s]hall not apply to liability imposed upon the insured arising out of asbestosis,' " *id.,* adopting the exact wording of the exclusion contained in the U.S. Fire Policy.

## B. *The District Court Proceedings*

Carey Canada and Celotex each filed separate actions against nine insurance companies that sold excess liability policies to Jim Walter between October 1, 1977 and October 1, 1982.[2] In 1986, the District Court consolidated the actions after Celotex's case before the District of Columbia Superior Court had become diverse and Columbia Casualty, among others, had removed the case to the United States District Court for the District of Columbia.

Prior to consolidation, Carey Canada moved for partial summary judgment on the ground that the meanings of the policies' asbestos-related exclusions and the term "asbestosis" were clear and unambiguous. The District Court denied the motion. *Carey Canada, Inc. v. Cal. Union Ins. Co.,* Civ. No. 83–1105, Memorandum Opinion (D.D.C. May 7, 1985) (*"Memorandum Opinion"*). In reaching its conclusion, the District Court reviewed two policies sold to a non-party insured, H.K. Porter Co., in which Columbia Casualty and First State had "used asbestosis in a narrow sense" to refer only to asbestosis. *Id.* at 8–9. The court reasoned that "[a]lthough this evidence is not dispositive, it does strongly support [Carey Canada's] position that the insurance companies knew

that asbestosis was a distinct disease, independent of mesothelioma." *Id.* at 9.

During discovery, the insureds filed motions to compel the defendant insurance carriers to produce other documents related to "policies sold by the defendants to non-party insureds," which contained asbestos-related exclusions. *Carey–Canada,* 118 F.R.D. at 243–44. Although the court found the documents relevant, *see id.* at 244, it restricted appellants' discovery to documents relating to policies with an asbestos-related exclusion which were written or referred to by the individual underwriters of the policies at issue, prior to the sale of those policies. *Id.* at 245. Under the District Court's order, the defendant insurance carriers produced no new non-party insured documents. Appellants complained to the court. The court consequently modified its original order. Again, the defendant insurance carriers produced no new non-party insured evidence.

On March 31, 1988, one month before the close of discovery, appellants again filed a motion to compel the defendant insurance carriers to produce the non-party insured documents sought in appellants' new discovery request. The District Court denied appellants' request because "[t]his motion, filed on the eve of the discovery cutoff in this action, is long out of time, and hence must be denied." *The Celotex Corp. v. Cal. Union Ins. Co.,* Civ. No. 86–1142, Memorandum Order at 3 (D.D.C. July 26, 1988).

In response to appellees' motion *in limine,* the court excluded all of appellants' non-party insured documents, including the H.K. Porter Policies, because they did not comport with the court's prior discovery orders. Moreover, when appellants proffered the non-party insured exhibits at trial, the court precluded appellants from

---

**2.** National Union and Columbia Casualty are the only defendants on this appeal. Two defendants, Northbrook Excess and Surplus Company, and the Home Insurance Company, settled with the insureds. *Carey Canada,* 720 F.Supp. at 1019. The other five defendants, including U.S. Fire and First State Insurance Company ("First State"), joined the "Wellington Agree-

ment," under which the parties litigated certain outstanding disputes concerning coverage for asbestos-related injury claims in binding, alternative dispute resolution proceedings. *Id.* at 1019 n. 2, 1026; *see also Carey–Canada, Inc. v. Cal. Union Ins. Co.,* 118 F.R.D. 242, 243 n. 1 (D.D.C.1986).

cross-examining the defendant insurance carriers' underwriters with the exhibits.

After the close of discovery, the parties filed motions for summary judgment on the scope of the exclusions. The court held that all of the asbestos-related exclusions at issue were ambiguous, and that the court would review extrinsic evidence at trial to determine the parties' intent. *Carey Canada*, 708 F.Supp. at 7.

The District Court held trial for seven days in February of 1989. On June 1, 1989, the court issued its findings and conclusions. *Carey Canada*, 720 F.Supp. 1018. The court found, *inter alia*, "that asbestosis is a medical term and, when correctly used, makes reference to a specific, single disease caused by the inhalation of asbestos fibers." *Id.* at 1020. The court nonetheless held that the defendant insurance carriers

> have produced clear and convincing evidence that, in the context of the situation existing in 1977 when asbestos manufacturers were inundated with thousands of lawsuits, the parties used the term "asbestosis" to exclude such risks in the generic sense. We further find in using the term "asbestosis" that it was objectively intended by all the parties that the exclusion of "asbestosis" should be interpreted to mean the exclusion of "all asbestos-related disease claims."

*Id.* at 1025.

Appellants then filed this appeal.

## II. DISCUSSION

### A. *Review of the District Court's Findings of Fact*

 The District Court's findings of fact, including the finding that the parties intended to exclude all asbestos-related disease claims, may be reversed only if they are clearly erroneous. *Salve Regina College v. Russell*, —— U.S. ——, 111 S.Ct. 1217, 1222, 113 L.Ed.2d 190 (1991) (citation omitted); *Robinson v. American Airlines, Inc.*, 908 F.2d 1020, 1022 (D.C.Cir.1990). Alternately stated, we will not reverse " '[i]f the district court's account of the evidence is plausible in light of the record

viewed in its entirety,' " or unless, after reviewing the entire record, we are " 'left with the definite and firm conviction that a mistake has been committed.' " *Cuddy v. Carmen*, 762 F.2d 119, 124 (D.C.Cir.) (citations omitted), *cert. denied*, 474 U.S. 1034, 106 S.Ct. 597, 88 L.Ed.2d 576 (1985). Significantly, the District Court found that all parties knew and understood that the "asbestosis" exclusions applied to all asbestos-related disease claims. The court supported this finding with subsidiary findings, reciting substantial and probative evidence, including, *inter alia:*

- Jim Walter and Rollin Burdick Hunter Co. used the terms "asbestosis" and "asbestos claims" interchangeably. *Carey Canada*, 720 F.Supp. at 1022, no. 18.
- Jim Walter used the term "asbestosis" to mean all asbestos-related disease claims when it provided loss data to insurance carriers. *Id.*, no. 19.
- Appellants treated the Aetna exclusion, which excluded all asbestos-related claims, as equivalent to an "asbestosis exclusion." *Id.* at 1022–23, no. 20.
- Appellants did not notify the insurance carriers of any of the thousands of asbestos-related disease claims over a five and one-half year period, until the week before they filed this lawsuit. *Id.* at 1023, nos. 21, 22.
- Jim Walter and appellants acknowledged that the policies at issue do not cover any asbestos-related disease claims in Annual Reports to shareholders and in sworn interrogatory answers submitted in other insurance coverage litigation. *Id.*, nos. 23, 24.

Based on this and other evidence, we are not " 'left with the definite and firm conviction that a mistake has been committed.' " *Cuddy*, 762 F.2d at 124. Hence, we cannot say the District Court's findings of fact are clearly erroneous. We therefore do not disturb these factual findings.

### B. *Review of the District Court's Legal Conclusions*

 The District Court decided three questions of law in determining that the parties intended the asbestosis exclusions

contained in the insurance policies at issue to exclude coverage for all asbestos-related disease claims: (1) the three asbestosis exclusions contained in the National Union and Columbia Casualty Policies were ambiguous; (2) the ambiguity in the exclusions required the court to consider extrinsic evidence of the parties' intent rather than construing the terms against the drafters (the defendant insurance carriers) as a matter of law; and (3) the 1979 National Union Policy was not governed by the alternative dispute resolution ("ADR") construction of the U.S. Fire asbestosis exclusion to which the 1979 National Union Policy followed form or incorporated by reference. We review the District Court's conclusions of law *de novo*. *Salve Regina College*, 111 S.Ct. at 1221; *Harbor Ins. Co. v. Omni Constr., Inc.*, 912 F.2d 1520, 1522 (D.C.Cir.1990). We affirm the District Court with regard to its conclusions that the 1977 National Union Policy was ambiguous and that extrinsic evidence was properly considered to determine the intent of the parties. We conclude, however, that the District Court erred in its ultimate legal conclusion with regard to the 1979 National Union Policy and the Columbia Casualty Policy because the court failed to determine that the term "asbestosis" is ambiguous based on objective evidence external to the pre-contractual views of the parties themselves, that in a broader context, *e.g.*, the insurance industry, public records, medical definitions, and the post-contractual course of performance, the term was used to mean more than the single non-cancerous disease asbestosis at the time the parties contracted. Accordingly, we remand the case for the District Court to determine whether "asbestosis" objectively was ambiguous.

### 1. The 1977 National Union Policy

■ The 1977 National Union Policy provided:

> [I]t is understood and agreed that any bodily injury or property damage claim or claims arising out of *all asbestosis operations* is excluded from the policy.

*Carey Canada*, 708 F.Supp. at 3 (emphasis in original). The District Court considered the evidence and determined that there is no such recognized term as an "asbestosis operation." *Id.* at 5 & n. 12. Indeed, as the court noted, the insureds conceded that the asbestosis exclusion language contained in the 1977 National Union Policy for "all asbestosis operations" is ambiguous on its face. *Id.* at 5 & n. 9. *See also* Appellants' Brief at 9 (the 1977 National Union Policy, "unlike the other two policies at issue, contains an ambiguous exclusion which uses 'asbestosis' as an adjective"); *id.* at 23, 31. Accordingly, the court considered extrinsic evidence to ascertain the intent of the parties. Based on the trial evidence, the court resolved that the parties intended to exclude all asbestos-related disease claims from coverage under the 1977 National Union Policy.

■ The insureds, however, maintain that the District Court should have construed the contracts against the defendant insurance carriers, as a matter of law, under the rule of *contra proferentum*, whereby the court construes ambiguous contract terms against the drafter. Appellants also argue that a special, and particularly stringent, version of the *contra proferentum* rule applies to insurance contracts. *See* Appellants' Brief at 32–34. We disagree.

■ Under Illinois law, the *contra proferentum* rule applies only if the intent of the parties cannot be ascertained from any other source. *Contra proferentum* is " '[a]t best ... a secondary rule of interpretation, a "last resort" which may be invoked after all of the ordinary interpretative guides have been exhausted.' " *Farwell Constr. Co. v. Ticktin*, 84 Ill.App.3d 791, 39 Ill.Dec. 916, 922, 405 N.E.2d 1051, 1057 (1980) (citations omitted). Moreover, *contra proferentum* "is inferior ... to extrinsic proof of the parties' agreement, or to other authority revealing that understanding." *Chicago v. Dickey*, 146 Ill. App.3d 734, 100 Ill.Dec. 412, 415, 497 N.E.2d 390, 393 (1986). Similarly, Florida law provides that "[o]nly when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule [of

*contra proferentum*] apposite." *State Farm Mutual Automobile Ins. Co. v. Pridgen,* 498 So.2d 1245, 1248 (Fla.1986) (citation omitted).

 Indeed, the authorities relied upon by appellants establish that the court must consider extrinsic evidence to clarify ambiguous contract terms. *See Dora Township v. Indiana Ins. Co.,* 78 Ill.2d 376, 36 Ill.Dec. 341, 342, 400 N.E.2d 921, 922 (1980) ("[i]n order to ascertain the intent of the parties the court should not examine the policy in a vacuum but should look to the circumstances surrounding the issuance of the policy"); *Stuyvesant Ins. Co. v. Butler,* 314 So.2d 567, 569 (Fla.1975) (meaning of the term "minor" should be "determined in the context within which the word is used"). With respect to the 1977 National Union Policy, the District Court properly considered extrinsic evidence to determine the scope of the policy exclusion upon finding the term "asbestosis operations" ambiguous. *Carey Canada,* 708 F.Supp. at 6.

2. The 1979 National Union Policy and the Columbia Casualty Policy

In its January 17, 1989 decision, the District Court made extensive findings of fact with respect to the 1979 National Union Policy and the Columbia Casualty Policy. *Carey Canada,* 720 F.Supp. at 1019. Specifically, the court concluded:

> [A]sbestosis is a medical term and, when correctly used, makes reference to a specific, single disease caused by the inhalation of asbestos fibers.

*Id.* at 1020, 1021–22. Additionally, the court found that appellants' position "is supported by medical definitions, by the compensation statutes of certain states and by legal decisions." *Id.* at 1021. The court also concluded that the meaning of asbestosis was a matter of public record based on congressional hearings, newspaper and magazine articles, and insurance industry trade journals. *Id.*

To counter this evidence regarding the proper use of the term "asbestosis,"[3] the court cited the parties' negotiations to suggest that they intended to use the term generically to cover all asbestos-related diseases. *Id.* at 1022–25. The court, however, cited little evidence external to the parties' negotiations to demonstrate that the term "asbestosis" was ever used ambiguously by anyone other than the parties in this case.

> [I]n using the term "asbestosis" ... it was objectively intended by all the parties that the exclusion of "asbestosis" should be interpreted to mean the exclusion of "all asbestos-related disease claims."

*Id.* at 1025. The court apparently assumed that it could consider evidence of the parties' subjective pre-contractual intent in order to find a latent ambiguity.

 It does not appear to us that either Florida or Illinois law permits this approach. Under Florida and Illinois law, as in other states, a court construing a contract must give effect to the parties' intent as expressed in the contract. *See Towne Realty, Inc. v. Safeco Ins. Co.,* 854 F.2d 1264, 1267 (11th Cir.1988) ("Florida law is quite clear that the parties' intent is to be measured solely by the language of the policies unless the *language* is ambiguous") (emphasis in original) (citing *Durham Tropical Land Corp. v. Sun Garden Sales Co.,* 106 Fla. 429, 138 So. 21, 23 (1931)); *Conway Corp. v. Ahlemeyer,* 754 F.Supp. 596, 599 (N.D.Ill.1990) (court's " 'primary objective in construing a contract is to ascertain the intent of the parties and to give effect to that intent' ") (quoting *United Airlines, Inc. v. City of Chicago,* 116 Ill.2d 311, 318, 107 Ill.Dec. 705, 708, 507 N.E.2d 858, 861 (1987)). If the language used in the contract is ambiguous or vague and does not in itself disclose the parties' intent, then the court must resort to usage or other surrounding circumstances existing at the time the con-

3. Although the District Court mentioned that one medical expert appearing for the defendant insurance carriers testified that "the term 'asbestosis' was occasionally used generically, to cover related diseases caused by asbestos," it nonetheless found that "the *medical* meaning of the term is not in serious dispute." *See id.* at 1020–21 (emphasis added).

tract was made to divine the intent of the parties. *See Conway*, 754 F.Supp. at 599.

Evidence of surrounding circumstances is admissible only where the written contract is ambiguous. *See Chicago Bd. of Options Exchange, Inc. v. Conn. Gen. Life Ins. Co.*, 713 F.2d 254, 258 (7th Cir.1983) ("In construing ambiguous contract the court must consider any evidence that sheds light upon the intentions of the parties, including the situation of the parties, the purpose of the contract, and the circumstances surrounding the formation of the contract") (citations omitted); *Indemnity Ins. Co. v. Du Pont*, 292 F.2d 569, 574 (5th Cir.1961) (unless there is an ambiguity in the contract terms, extrinsic evidence is inadmissible); *Ace Electric Supply Co. v. Terra Nova Electric, Inc.*, 288 So.2d 544, 547–48 (Fla.App.1973) (same). Ambiguity exists in an insurance policy only when its terms make the policy reasonably susceptible to different constructions and interpretations, one resulting in coverage and one resulting in exclusion. *See Thompson v. Amoco Oil Co.*, 903 F.2d 1118, 1120 (7th Cir.1990); *Towne Realty*, 854 F.2d at 1267; *Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.*, 757 F.2d 1172, 1174–75 (11th Cir.1985); *Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chemical Corp.*, 684 F.2d 776, 780 (11th Cir.1982); *see also Papago Tribal Utility Authority v. FERC*, 723 F.2d 950, 955 (D.C.Cir.1983), *cert. denied*, 467 U.S. 1241, 104 S.Ct. 3511, 82 L.Ed.2d 820 (1984).

The court may not create ambiguity where none exists. *Simmons Refining Co. v. Royal–Globe Ins. Co.*, 543 F.2d 1195, 1197 (7th Cir.1976). Significantly, neither the mere absence of a policy definition nor the presence of a dispute as to meaning of the provision necessarily renders the policy or term ambiguous. *Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1360 (11th Cir.1988), *cert. denied*, 488 U.S. 1041, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989); *Keyser v. Conn. Gen. Life Ins. Co.*, 617 F.Supp. 1406, 1410 (N.D.Ill.1985). If the language found in the policy is not ambiguous or otherwise susceptible of more than one meaning, the court's duty is to apply the plain meaning of the words and phrases used to the facts before it. The court is without authority to rewrite the policy or add meaning to it that is not there. *National Union Fire Ins. Co. of Penn. v. Carib Aviation, Inc.*, 759 F.2d 873, 876 (11th Cir.1985); *see also FDIC v. W.R. Grace & Co.*, 877 F.2d 614, 620–21 (7th Cir.1989) ("the 'four corners' rule, which excludes extrinsic evidence if the contract is clear 'on its face'" shows that there "is ancient wisdom as well as ancient prejudice"), *cert. denied*, —— U.S. ——, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990); *Orkin*, 849 F.2d at 1362 (where party seeks to prove latent ambiguity, interpretation urged must be reasonable and resolve *actual* ambiguity, not *create* one). Courts determine whether a party's construction of a term is reasonable from objective circumstances, not merely by looking at the course of dealing between the parties or other internal evidence of the parties' understandings. *See FDIC*, 877 F.2d at 621. Otherwise, the contract would not protect the parties. *Id.* (nature of the offer of proof to demonstrate ambiguity is critical determination).

Where the terms of the contract are ambiguous, vague, or indefinite, where the words have, by the usage of trade, acquired a particular meaning, or where the words are technical or are applicable to a certain trade and require an explanation or interpretation in order to determine what the parties meant, parol evidence of usage is admissible to explain them. *Standard Oil Co. v. United States*, 340 U.S. 54, 58–60, 71 S.Ct. 135, 137–38, 95 L.Ed. 68 (1950) (Supreme Court resorted to extrinsic evidence to clarify phrase "predominantly and determining" in relation to causation in insurance policy); *accord Nationwide Mutual Ins. Co. v. Jones*, 414 So.2d 1169, 1171 (Fla.App.1982) (extrinsic evidence of industry and individual practices admissible to clarify ambiguity); *English & American Ins. Co. v. Swain Groves, Inc.*, 218 So.2d 453, 456 (Fla.App.1969) (court allowed extrinsic evidence of industry practice to ascertain meaning of term "value of the crop"); *Wilson v. Resolute*

*Ins. Co.*, 132 Ill.App.2d 174, 267 N.E.2d 720, 723 (1971) ("Industry practice is relevant, and indeed may be determinative, in suits between members of the industry"). Thus, the court must interpret the contract in view of the usages and customs affecting the agreement, where the terms used are of doubtful meaning otherwise. *Standard Oil Co.*, 340 U.S. at 60, 71 S.Ct. at 139 ("in interpreting insurance contracts reference should be made to considerations of business and insurance practices") (citation omitted).

We emphasize that such evidence is admissible only where the contract language is in fact ambiguous. For example, in *Wilson v. Resolute Ins. Co.*, *supra*, the Appellate Court of Illinois found no ambiguity where an automobile liability policy contained an omnibus clause but had therein a rating symbol "1" used when the premium charged was for a policy which excluded drivers under age 25, but no such exclusion endorsement was attached to policy. The appellate court held that the trial court acted properly in holding that the insureds' 18 year-old son driving with the insureds' permission was covered by the policy. The court held that there was no reason to resort to extrinsic evidence or to admit evidence as to the acknowledged industry practice in construing the unambiguous policy language, and therefore the court correctly applied the plain meaning of the policy's terms to the particular facts of the case. *Wilson*, 267 N.E.2d at 723.

The defendant insurance carriers contend that *FDIC*, *supra*, allows the admission of evidence of the parties' negotiations whenever a party raises an ambiguity claim. We disagree. Under the *FDIC* court's analysis, objective extrinsic evidence, not evidence of the parties' dealings, is admissible to show that "although the agreement itself is a perfectly lucid and apparently complete specimen of English prose, anyone familiar with the real-world context of the agreement would wonder what it meant with reference to the particular question that has arisen." *FDIC*, 877 F.2d at 620.

In *FDIC*, the Seventh Circuit Court of Appeals reviewed Illinois precedent. In deciding that objective extrinsic evidence was required to determine if an ambiguity existed, the court reviewed the facts involved in *Rakowski v. Lucente*, 104 Ill.2d 317, 84 Ill.Dec. 654, 472 N.E.2d 791 (1984). *See FDIC*, 877 F.2d at 621–22. Significantly, the appellant in *Rakowski* sought to introduce subjective evidence in the form of an affidavit containing appellant's assertion that he did not intend to include his right to seek contribution in a settlement releasing a party from liability. *Rakowski*, 104 Ill.2d at 324, 84 Ill.Dec. at 657, 472 N.E.2d at 794. The *FDIC* court dismissed this evidence as insufficient to create an ambiguity. *FDIC*, 877 F.2d at 621–22. "The fact that the parties to a contract disagree about its meaning does not show that it is ambiguous, for if it did, then putting contracts into writing would provide parties with little or no protection." *Id.* at 621. Thus, a party's self-serving statement is insufficient to establish ambiguity.

Rather, objective evidence—a showing that anyone who understood the context of the contract would know it could not mean what an unskilled reader would suppose it to mean—is required. *FDIC*, 877 F.2d at 622. *See also Conway Corp.*, 754 F.Supp. at 601 & n. 12; *Harris Bank Naperville v. Morse Shoe, Inc.*, 716 F.Supp. 1109, 1112 (N.D.Ill.1989). We thus read *FDIC* to authorize a court assessing a claim of ambiguity to consider extrinsic evidence of an agreement's "commercial context," *i.e.*, the industry or trade practices milieu within which the parties executed a particular agreement.

Florida law also requires objective evidence of ambiguity. In *Durham Tropical Land Corp. v. Sun Garden Sales Co.*, 106 Fla. 429, 138 So. 21 (1931), the Florida Supreme Court rejected a trial court finding that an insurance policy was ambiguous because concurrent execution of insurance policies created an ambiguity as to which insurer had primary liability. The Florida Supreme Court held: "The intention of the parties to a contract is to be deducted from language employed, and such intention, when expressed, is controlling, regardless of intention existing in the

minds of parties." 138 So. at 23 (emphasis and citations omitted).

Moreover, in *Orkin Exterminating Co., Inc. v. FTC, supra,* the Eleventh Circuit, construing Florida law, concluded that " '[a]n ambiguity in a contract cannot be created by the mere assertion of a party to it.' The fact that the meaning of a contract term is disputed likewise reveals no ambiguity." 849 F.2d at 1360 (quoting *Vreeland v. Federal Power Comm'n,* 528 F.2d 1343, 1351 (5th Cir.1976)).

Thus, we read both Florida and Illinois law to require more than a subjective showing that a contract term is ambiguous. Furthermore, we find persuasive Judge Posner's reasoning in *FDIC* that objective evidence of an ambiguity is necessary to find a contract term ambiguous. Accordingly, we reject the defendant insurance carriers' suggestion that *FDIC* allows the court to find the term "asbestosis" ambiguous solely upon examining the parties' course of dealings. On the contrary, absent a showing of an external ambiguity— one which would cause "anyone cognizant of the commercial setting," *FDIC,* 877 F.2d at 622, to find the term "asbestosis" ambiguous—the term "asbestosis," as found by the District Court, unambiguously would seem to refer to a "separate disease caused by asbestos and is distinct from plaques, mesothelioma and bronchogenic carcinoma." *Carey Canada,* 720 F.Supp. at 1021–22.

To hold otherwise, without objective evidence of ambiguity, could defeat the intent of the parties to abide by the terms of the contract and to indemnify the insureds for asbestos-related claims other than those for the specific disease asbestosis, allowing one party to create ambiguity where none exists. We therefore remand the case for further findings to determine whether the term "asbestosis" was used ambiguously in the public record and the insurance industry at the time the parties concluded the 1977 National Union Policy and the Columbia Casualty Policy.[4]

3. The Binding Effect of the Alternative Dispute Resolution Interpretation of the "Arising Out of Asbestosis" Exclusion Upon the 1979 National Union Policy

Appellants contend that the trial court erred in not finding National Union bound under the doctrines of collateral estoppel and "following form" based on the result of an ADR construction of the U.S. Fire exclusion incorporated into the 1979 National Union Policy. The District Court concluded that the following form doctrine and collateral estoppel did not preclude National Union from asserting that the term "asbestosis" was ambiguous despite the decision of an ADR arbitrator to the contrary. In the ADR proceeding, U.S. Fire and appellants agreed that the policies only excluded the single disease asbestosis. The District Court nevertheless reasoned that the arbitration did not have binding effect on National Union because: (1) it was the result of a private contractual arrangement between appellants and U.S. Fire; (2) National Union was not a party to the ADR proceeding and no evidence was taken from National Union; (3) the ADR arbitrator did not have access to the voluminous documentary evidence presented in

---

4. We remand the case to the District Court rather than reverse outright because, although the trial judge cited little objective evidence of ambiguity in his decision, defendants' claim that the record contains some objective evidence which could support a finding that "asbestosis" was used in a broader sense in the commercial context at the time when the 1978 Columbia Casualty Policy and the 1979 National Union Policy were written. *See Defendant's Joint Opposition to Plaintiffs' Motion For Partial Summary Judgment that the Asbestos-Related Exclusions to Defendants' Policies Exclude Coverage Only for the Single, Distinct Disease Asbestosis,* at 22–23 (citing expert testimony and medical

journals), 42–45 (citing court decisions, congressional testimony, and insurance industry periodicals). *See also Carey Canada,* 708 F.Supp. at 6 (citing Illinois and Florida decisions in which the parties used the term "asbestosis" broadly). We offer no opinion as to the viability of defendants' claims on this point. Rather, we remand for the trial court, applying the standards we have set forth, to determine the sufficiency of this record evidence and any other evidence which may exist to establish that "asbestosis" was objectively susceptible to more than one fixed usage and hence was ambiguous in the insurance industry at the time of the making of the contracts.

this case; (4) the ADR arbitrator based his conclusion on the fact that U.S. Fire signed the Wellington Agreement and thereby waived its right to assert that its policies excluded more than "asbestosis;" and (5) the ADR arbitrator's determination that the term "asbestosis" was unambiguous and that extrinsic evidence to determine the intent of the parties was inadmissible was contrary to the District Court's findings. *Carey Canada*, 720 F.Supp. at 1026.

■ Whether National Union is bound by the ADR proceeding involving U.S. Fire is not a question of collateral estoppel, but of contract interpretation. *See Keith v. Aldridge*, 900 F.2d 736, 741 (4th Cir.) (whether parties intend to foreclose through agreement litigation of claim is a matter of contract interpretation), *cert. denied*, —— U.S. ——, 111 S.Ct. 257, 112 L.Ed.2d 215 (1990). Thus, the principal inquiry is whether National Union's decision to "follow form" to the U.S. Fire asbestosis exclusion means that National Union's liability is inextricably tethered to that of the insurer whose form it followed. As the court did not address this issue, we remand the case and direct the court to ascertain whether as a matter of contract interpretation the form-following provisions of the 1979 National Union Policy yoke National Union's fate to that of U.S. Fire, rendering National Union equally liable under the 1979 National Union Policy.

## C. *The District Court's Discovery and Evidentiary Rulings*

■ The District Court acted within the broad discretion afforded trial courts when it limited the scope of discovery of non-party insured evidence. We may reverse the District Court's discovery and evidentiary rulings only if these rulings are an abuse of discretion. *Viles v. Ball*, 872 F.2d 491, 494 (D.C.Cir.1989); *Brune v. IRS*, 861 F.2d 1284, 1288 (D.C.Cir.1988). Thus, we review the court's discovery ruling to determine if the court's " 'actions were clearly unreasonable, arbitrary, or fanciful.' " *Hull v. Eaton Corp.*, 825 F.2d 448, 452 (D.C.Cir.1987) (quoting *Northrop Corp. v.*

*McDonnell Douglas Corp.*, 751 F.2d 395, 399 (D.C.Cir.1984)).

■ In the present case, appellants sought discovery of other policies issued by the defendant insurance carriers to other policy holders that contained asbestos-related exclusions. The District Court found these documents relevant, but concluded that "the enormity of the discovery sought and the heavy burden such would impose on the defendants," *Carey–Canada*, 118 F.R.D. at 245, warranted restricting the scope of discovery. Consequently, the court limited appellants' discovery "to documents relating to the policies defendants sold to non-party insureds that contain an asbestos-related exclusion and which were written or referred to by the underwriters of the policies at issue in the instant case prior to the issuance of the policies before the court." *Id.* at 245 (emphasis omitted).

On April 8, 1987, appellants again sought discovery of other policies. Appellants waited, however, until March 31, 1988—one month before the close of discovery and five years after the action commenced—to file a motion to compel. Thus, the District Court denied the motion on July 26, 1988, in part because appellants did not seek modification of the court's earlier order in a timely fashion. *The Celotex Corp. v. Cal. Union Ins. Co.*, Civ. No. 86–1142, Memorandum Order (D.D.C. July 26, 1988). Against this background, we cannot conclude that the trial court's handling of discovery in this case was an abuse of discretion or clearly unreasonable. Accordingly, we hold the court's rulings reasonable and not arbitrary.

■ Appellants also claim that the District Court's refusal to allow them to introduce evidence within the scope of the court's discovery order at trial is reversible error. We do not address this question with respect to the 1979 National Union Policy and the Columbia Casualty Policy since we are remanding for further consideration and the District Court will want to determine anew the admissibility of the evidence in light of this opinion. Any error committed by the District Court when it prevented appellants from introducing evi-

dence consistent with the court's discovery orders,[5] is harmless and thereby not reversible under this Circuit's precedents. *See Carter v. District of Columbia,* 795 F.2d 116, 132 (D.C.Cir.1986) (harmless error rule applies if defects do not affect parties' substantial rights); *United States v. Hernandez,* 780 F.2d 113, 119 (D.C.Cir.1986) (same). The test for determining whether a trial court's evidentiary ruling is harmless is clear: "If (1) the case is not close, (2) the issue not central, or (3) effective steps were taken to mitigate the effects of the error, the error is harmless." *Id.* (citing *Gaither v. United States,* 413 F.2d 1061, 1079 (D.C.Cir.1969)). Here, the District Court, after reviewing 1400 exhibits and hearing seven days of testimony, found "clear and convincing evidence that all parties to these insurance contracts understood and interpreted them to exclude all asbestos-related disease claims." *Carey Canada,* 720 F.Supp. at 1026. Thus, the case is not close with respect to the 1977 National Union Policy.

### III. Conclusion

The District Court's judgment that the 1977 National Union Policy was ambiguous

on its face was not clearly erroneous. We therefore affirm these findings and conclusions. The District Court, however, erred in not finding whether objective extrinsic evidence demonstrated that the Columbia Casualty Policy and the 1979 National Union Policy exclusions for claims "arising out of asbestosis" are ambiguous. Accordingly, we vacate and remand the case for findings on the question whether the term "asbestosis" was used ambiguously in the insurance industry at the time the Columbia Casualty Policy and 1979 National Union Policy were written. Additionally, we direct the District Court to determine whether the form-following provisions of the 1979 National Union Policy ties National Union's fate to that of U.S. Fire, rendering National Union equally liable under the 1979 policies as determined in the ADR proceeding involving U.S. Fire.

*So Ordered.*

5. Appellants contend the court committed reversible error when it excluded evidence of the First State and H.K. Porter Policies upon which

the court itself relied in its summary judgment decision. *See Memorandum Opinion,* Civ. No. 83–1105 at 8–9 (May 7, 1985).